# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| ABRAHAM H. CARR, Ph.D., CPA<br>**Plaintiff,** | § § § | |
| v. | § § | CIVIL ACTION NO. __2:25-cv-272__ |
| WALTER V. WENDLER, in his individual<br>capacity and official capacity as the<br>**President of West Texas A&M University;** | § § § § § | |
| GLENN HEGAR in his official capacity as<br>**Chancellor of The Texas A&M University System** | § § § | |
| ROBERT L. ALBRITTON,<br>JAY C. GRAHAM, DAVID C. BAGGETT<br>JOHN W. BELLINGER, JAMES R. BROOKS,<br>MICHAEL A. HERNANDEZ, III,<br>WILLIAM  MAHOMES,<br>KELLEY SULLIVAN GEORGIADES,<br>and R. SAM TORN, in their official capacities as<br>members of **THE TEXAS A&M UNIVERSITY<br>SYSTEM BOARD OF REGENTS** | § § § § § § § § § § § | |
| NEIL W. TERRY, in his individual capacity<br>and official capacity as Executive Vice<br>Vice President of Academic Affairs and<br>Provost, West Texas A&M University; | § § § § § | |
| AMJAD ABDULLAT, in his individual<br>capacity and official capacity as<br>Dean of the Paul and Virginia Engler College<br>of Business, West Texas A&M University; | § § § § § | |
| JEFFRY S. BABB, in his individual capacity<br>and official capacity as Associate Dean<br>of the Paul and Viginia Engler College<br>of Business, West Texas A&M University | § § § § § | |
| ROBERT A. KING, in his individual capacity<br>and official capacity as Associate Dean<br>of the Paul and Virginia Engler College<br>of Business, West Texas A&M University | § § § § § § | |
| **Defendants.** | § | |

## COMPLAINT

Plaintiff Abraham H. Carr, Ph.D., CPA ("Dr. Carr") complains of Defendants Walter V. Wendler, in his individual capacity and official capacity as the President of West Texas A&M University ("WTAMU"), Glenn Hegar in his official capacity as Chancellor of The Texas A&M University System, Robert L. Albritton, Jay C. Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Michael A. Hernandez, III, William Mahomes, Kelley Sullivan Georgiades, and R. Sam Torn, in their official capacities as members of The Texas A&M University System Board of Regents, Neil W. Terry, in his individual capacity and official capacity as WTAMU Executive Vice President of Academic Affairs and Provost; Amjad Abdullat, in his individual capacity and official capacity as Dean of the Paul and Virginia Engler College of Business ("PVECOB"), WTAMU; Jeffry S. Babb, in his individual capacity and official capacity as the Associate Dean of the PVECOB; and Robert A. King in his individual capacity and official capacity as the Associate Dean of the PVECOB. Plaintiff respectfully shows the Court:

## NATURE OF THE CASE

1.    The relationship between faculty and the academic institution of The Texas A&M University System for which they work requires balance between the responsibilities and obligations of the faculty with the requirements and demands of the system and its academic institutions.  Policies of The Texas A&M University System and WTAMU provide the basis upon which faculty may be hired, granted tenure, and dismissed.  The responsibilities of the faculty are described, as are the criteria by which they will be evaluated.[1]

2.    Institutions of higher education exist for the common good. The common good depends upon an uninhibited search for truth and its open expression.  Therefore, it is essential

---

[1] *See* The Texas A&M University System, Academic Freedom, Responsibility and Tenure, System Policy 12.01

2

that each faculty member be free to pursue scholarly inquiry and to voice and publish individual conclusions concerning the significance of evidence that the faculty member considers relevant. Each faculty member must be free from the corrosive fear that others, inside or outside the academic community, because their vision may differ, may threaten the faculty member's professional career or the material benefits accruing from it.[2]

3.    Additionally, each faculty member is also a citizen of the nation, state and community; and when speaking, writing or acting as such, must be free from institutional censorship or discipline, subject to academic responsibility.[3]

4.    To ensure an equitable and balanced University-wide approach to the annual review of faculty, all academic departments and colleges must have a written policy statement that describes the standards for annual performance, tenure, promotion and appeal of those decisions.

5.    Policies governing Non-renewal of Employment are set out in the Faculty Handbook ("Handbook"), specifically in the Section entitled "Employment Procedures." Policies governing appeal of a non-renewal decision are set forth in the Handbook at section 8, entitled "Promotion and Tenure," including the right to participate in an evidentiary hearing with the right to representation at such hearing.

6.    Dr. Carr exercised his First Amendment rights while employed at WTAMU. Certain individual defendants took retaliatory action, actions which defendants ratified, resulting in the non-renewal of Carr's appointment as Assistant Professor of Accounting within the Engler College of Business, West Texas A&M University.

---

[2] *Id.*
[3] *Id.*

7.      Moreover, Dr. Carr was initially denied (1) his right to be present at an evidentiary hearing; and (2) his right to representation at an evidentiary hearing. Therefore, Carr was denied his right to due process and the individual defendants breached WTAMU policies.

8.      Defendants violated Dr. Carr's First Amendment right to free speech, deprived him of due process and equal protection of law, and breached WTAMU's contract with Dr. Carr.

9.      Finally, Defendants discriminated against Dr. Carr based on his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., ("Title VII"), by complaining about Dr. Carr's religious beliefs which caused Dr. Carr's termination. It is unlawful for employers to discharge any individual or otherwise discriminate against him with respect to his compensation, terms, conditions, or privileges of employment because of his religion. Discrimination which is prohibited includes harassment or retaliation.

## PARTIES

10.     Plaintiff Abraham H. Carr, Ph.D., CPA (herein "Dr. Carr" or "Plaintiff"), is a resident of Texas and a former professor at West Texas A&M University.

11.     Defendant Walter V. Wendler ("President Wendler") is the President of West Texas A&M University, a governmental entity under the laws of the State of Texas and governed by the Board of Regents of the Texas A&M University System. As President, Wendler is the chief executive officer of the University and is elected by the Board of Regents. The president is responsible to the chancellor and the Board of Regents for the operation and management of the University. As chief executive officer of the University and the administrative arm of the Board of Regents, the president is responsible for the implementation of policies approved by the board of regents. The president has the final authority to approve, reject or modify recommendations of the faculty and administrative staff on matters which do not require board action. Plaintiff sues

President Wendler in his individual capacity and his official capacity as President of West Texas A&M University. President Walter Wendler may be served at: West Texas A&M University, Old Main #302, Canyon, TX 79016.

12. Defendant Glenn Hegar is the Chancellor of the Texas A&M University System ("Chancellor" or "Hegar"), a governmental entity under the laws of the State of Texas. As Chancellor, Hegar is the chief executive officer of the Texas A&M University System and reports to and is responsible to the Board of Regents for the general management and success of the System. Plaintiff sues Chancellor Hegar in his official capacity as Chancellor of the Texas A&M University System. Chancellor Hegar may be served at: Moore/Connally Building, 7th Floor, 301 Tarrow, College Station, TX 77840-7896.

13. Defendant Robert L. Albritton is Chairman, presiding officer, and a member of the Board of Regents of the Texas A&M University System. Plaintiff sues Defendant Albritton in his official capacity. Mr. Albritton may be served at: Texas A&M University System Board of Regents, Memorial Student Center, Suite L500, 1123 TAMU, College Station, TX 77843.

14. Defendant Jay C. Graham is Vice Chairman and a member of the Board of Regents of the Texas A&M University System. Plaintiff sues Defendant Graham in his official capacity. Mr. Graham may be served at: Texas A&M University System Board of Regents, Memorial Student Center, Suite L500, 1123 TAMU, College Station, TX 77843.

15. Defendants David C. Baggett, John W Bellinger, James R. Brooks, Michael A. Hernandez, III, William Mahomes, Kelley Sullivan Georgiades and R. Sam Torn are the remaining members of the Board of Regents of the Texas A&M University System. Plaintiff sues each of these members in their official capacities. Albritton, Graham and these defendants are collectively referred to as the "Board Defendants." Each of these members of the Board of Regents may be

served at: Texas A&M University System Board of Regents, Memorial Student Center, Suite L500, 1123 TAMU, College Station, TX 77843.

The Board of Regents of the Texas A&M University System is empowered to make "bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services." Tex. Educ. Code § 85.21(a). In that role, the Board has the power and duty to require President Wendler to abide by the policies of the Faculty Handbook of WTAMU, yet it has not done so.

16.     Defendant Amjad Abdullat ("Dr. Abdullat") is the Dean of the PVECOB, West Texas A&M University. The dean has the responsibility to provide leadership to faculty with administrative duties including supervision of faculty evaluation. Plaintiff sues Dr. Abdullat in his individual capacity and his official capacity. Dr. Abdullat may be served at: West Texas A&M University, Classroom Center, #216A, Canyon, TX 79016.

17.     Defendant Jeffry S. Babb ("Dr. Babb") is the Associate Dean of the Graduate Program in the PVECOB, West Texas A&M University. The associate dean is appointed by the Dean of the PVECOB and has various assignments including implementing and carrying out campus policies and advancing the mission of the college as directed by the College Dean. Plaintiff sues Dr. Babb in his individual capacity and his official capacity. Dr. Babb may be served at: West Texas A&M University, Classroom Center, #208H, Canyon, TX 79016.

18.     Defendant Robert A. King ("Dr. King") is the Associate Dean of the Undergraduate Program in the PVECOB, West Texas A&M University. The associate dean is appointed by the Dean of the PVECOB and has various assignments including implementing and carrying out campus policies and advancing the mission of the college as directed by the College Dean. Plaintiff

sues King in his individual capacity and his official capacity. Dr. King may be served at: West Texas A&M University, Classroom Center, #210, Canyon, TX 79016.

19.    Defendant Neil W. Terry ("Dr. Terry") is the Executive Vice President of Academic Affairs and Provost ("EVPP"). The executive vice president and provost for academic affairs is the chief academic officer and is responsible for the administration of the colleges. The academic deans report to the EVPP. The EVPP is the focal point of recommendations to the president regarding personnel policies affecting faculty. The EVPP monitors faculty workloads and is responsible for the coordination of faculty recruitment and improvement. The vice president reviews recommendations of the academic deans and direct supervisors regarding appointments, salary increments, promotions, tenure, and termination of faculty and academic staff, and transmits them to the president with recommendations. Dr. Terry may be served at: West Texas A&M University, Old Main #307, Canyon, TX 79016.

Additionally, Dr. Terry is the former Dean of the Paul and Virginia Engler College of Business at WTAMU and is married to Anne M. Terry (a/k/a Anne Macy), Director of the School of Accounting, Economics, and Finance at WTAMU, where Plaintiff Dr. Carr was an Assistant Professor of Accounting. Plaintiff sues Dr. Terry in his individual capacity and his official capacity.

20.    At all times relevant to the actions in the Complaint, Defendants acted under color of state law.

21.    The Organization Chart of WTAMU, a member of The Texas A&M University System relevant to this matter follows:



**JURISDICTION & VENUE**

22.    This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983. Thus, this Court has subject matter jurisdiction over these federal causes of action under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over state claims under 28 U.S.C. §1367.

23.    This Court has personal jurisdiction over all defendants because they reside in the State of Texas.

24.    Venue is proper in this Court under 28 U.S.C. §1391(b) because the acts and injuries alleged occurred in and continue to occur in this judicial district, at least one defendant resides in this district, and all defendants are residents of the State of Texas.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

25.     Dr. Carr's Title VII religious discrimination claims are properly before this Court. Carr filed a charge against West Texas A&M University with the Equal Employment Opportunity Commission on November 19, 2025. *See* Exhibit A, attached hereto. On December 2, 2025, Carr received his right to sue letter from the EEOC, which advised Carr he had a right to institute a civil action against West Texas A&M University under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. *See* Exhibit B, attached hereto.

26.     Carr has exhausted his administrative remedies with the United States Equal Employment Opportunity Commission and, upon receiving a Right to Sue letter, seeks his additional claims for religious discrimination pursuant to Title VII of the Civil Rights Act of 1964.

## FACTUAL BACKGROUND

27.     Dr. Carr is a former professor at West Texas A&M University.

28.     On November 17, 2023, Dr. Carr accepted an offer for the position of Assistant Professor of Accounting at the Engler College of Business, West Texas A&M University, a tenure-track appointment and a position in which he was eligible to be tenured, pursuant to the Promotion and Tenure Rule of the Faculty Handbook and the Texas A&M University System Board of Regents policies.

29.     Dr. Carr's appointment was effective Fall 2024, with a nine-month base salary, a three-year faculty development support and start-up package with funds for relocation (from Creighton University in Nebraska), and funds for travel and professional development for academic years 2024-2025, 2025-2026 and 2026-2027.

30. Prior to Dr. Carr's arrival at WTAMU, a vote of No Confidence was expressed by the full-time faculty at WTAMU for matters including President Wendler's expression of his own religious ideology and personal opinions.

31. After Dr. Carr began his career at WTAMU, Wendler visited the Paul and Virginia Engler College of Business ("PVECOB"). During that meeting Dr. Carr publicly praised President Wendler. It was reported that PVECOB faculty members were upset with Dr. Carr's public expression of support for President Wendler.

32. In other meetings during Dr. Carr's employment at the PVECOB, Dr. Amjad Abdullat, the Dean of the PVECOB, counseled Dr. Carr to "calm down" and restrict his speech which was perceived as offensive to certain other faculty members.

33. Non-tenured, tenure-track faculty are provided with an annual letter of appointment stating the terms of their employment. The appointment is governed by the policies of The Texas A&M System, West Texas A&M University, and the policies, regulations and procedures set forth in the Faculty Handbook. Rights of notification of non-renewal and terminal appointments are contained in Section III.

34. During the week of February 9, 2025, Associate Deans Dr. Jeffry Babb and Dr. Robert King met with Amarillo National Bank School of Accounting, Economics, and Finance ("AEF") senior faculty and Ms. Lisa Lightfoot (Instructor) to discuss the continuation of Dr. Carr's appointment.

35. On February 13, Dr. Babb and Dr. King met with Dr. Carr and verbally informed him that his appointment would not be continued. The same day, Drs. Babb and King transmitted a memorandum to PVECOB Dean, Dr. Abdullat, indicating that they "concur[red]" with the recommendation by "senior faculty" in AEF that Dr. Carr's appointment not be continued due to

a "loss of confidence in his ability to successfully progress further in his probationary period" in a perceived "misalignment with the expectations, norms, and standards of the discipline, department, and college."

36.    On February 14, Dr. Abdullat communicated to Dr. Terry that senior faculty and associate deans had "firmly recommended not renewing his appointment, citing concerns about his role perception engagement and fitness with colleagues." Dr. Abdullat also noted that "National Bank School of Economics and Finance undermine his ability to advance successfully during his probationary period" and that Dr. Carr's "approach has failed to align with these fundamental expectations, making his continued appointment untenable."

37.    Also on February 14, Dr. Carr emailed Dr. Abdullat seeking clarification of the applicable procedure to appeal the decision. In that email, Dr. Carr asked "[w]hat section of the WTAMU University Faculty Handbook governs this appeal process?" and "[t]o whom am I to submit my appeal?", among other questions. In his response, sent the same day, Dr. Abdullat explained that the "relevant process [for the appeal procedure] is outlined in <u>Section 8</u> of the Faculty Handbook (page 58) and Sections 5.1.7 and 5.1.8." (emphasis added).

38.    Then, on February 19, 2025, a short five months after Dr. Carr's appointment began, Dr. Carr received a Memorandum from Dr. Terry that the associate deans and dean recommended non-renewal, resulting in Carr's non-continuation of employment after the Spring 2025 semester. In that Memorandum, Dr. Carr was referred to the Texas A&M System Policy 12.0, West Texas A&M University Procedures 12.02.01-W1/AA and 12.99.01, and the WT Faculty Handbook, if Dr. Carr wished to take any action regarding the decision, including presenting a grievance and the right to appeal the decision not to reappoint.

You also have the right to appeal the decision not to reappoint, but only on the basis of an allegation that the decision was made: (1) in violation of your academic freedom; (2) for an illegal (i.e., discriminatory) reason; or (3) for inadequate consideration of your record of professional achievement. At least one of these allegations must be made to initiate the appeal process. If you desire to appeal, you must notify the Provost, in writing, not later than the 20th business day after you received this notice of nonrenewal.

39.     Among the reasons cited for Dr. Carr's non-renewal were subjective statements regarding "his role perception engagement and fitness with colleagues," "personnel decisions must prioritize faculty who align with our institutional and college goals," and Dr. Carr's "misalignment with the expectations, norms and standards …."

40.     However, a colleague of Dr. Carr, who was present at the February 9th meeting between Associate Deans Dr. Jeffry Babb, Dr. Robert King and the Amarillo National Bank School of Accounting, Economics, and Finance ("AEF") senior faculty, held to discuss the continuation of Dr. Carr's appointment, reported that, in discussing the renewal of Dr. Carr's contract, one of the faculty members involved remarked about Dr. Carr that, "he's just another one of those sexist Mormons." Dr. Carr is a member of The Church of Jesus Christ of Latter-Day Saints.

41.     On March 2, 2025, Dr. Carr submitted his appeal to President Wendler, with a copy to Dr. Terry, in accordance with Section 8 of the 2024 WTAMU Faculty Handbook, within the required twenty-day timeframe, and asked for a referral to a preliminary review committee from the Faculty Senate to determine if Carr had made a *prima facie* case, which would result in the appeal's being referred for an evidentiary hearing.

42.     On March 8, Dr. Terry emailed Dr. Carr directing that he "stop contacting President Wendler," claiming that he had not followed Terry's directions in initiating the appeal and incorrectly asserting that the "appropriate non-renewal policy in [Dr. Carr's] situation is on page 31 of the faculty handbook."

43.     On March 12, 2025 Dr. Terry notified Dr. Carr that the appeal had been denied, notwithstanding Terry's lack of authority to make the decision.

44.     According to Section III.A.2.b., "rights of notification of non-renewal and terminal appointments are governed by section III.C.6. and 7" of the Handbook. Section III.A.2b of the Handbook, to which Dr. Terry cited in his email to Dr. Carr, governs non-renewal for faculty members designated as either "temporary" or "probationary" in their letters of appointment. Although Dr. Carr recognizes that faculty who have not yet been granted tenure are commonly referred to as "probationary," his appointment letter does not include such a designation, in which case, under the plain meaning of the Handbook's language, Section III.C.4 (pg. 31) does not apply.

45.     By comparison, Section III.D.2 (pg. 44) contains the "rules and procedures on Promotion and Tenure of faculty at West Texas A & M University," which "apply to <u>all tenure-track faculty</u> members of the University." (emphasis added). Moreover, Section III.D.5.1.8 clearly states that the appeal procedure applicable to tenure-track faculty members subject to a decision of non- renewal "**is outlined in Section 8**." (emphasis added). Sections III.D.8.2-8.3 require that notification of the appeal "must be filed with the president" who "shall refer the appeal to a committee of three faculty members chosen at random by the Facility *[sic]* Senate President from the pool of members of the University's Faculty Grievance Committee." It is then up to the committee to make a determination as to whether the faculty member has made a *prima facie* case that the non-renewal decision was improper under one of three applicable tests. If such a determination is made, and under the available factual record it must be, the faculty member is entitled to an evidentiary hearing.

> "[Tenured and tenured track] Faculty members are evaluated in instructional responsibilities, intellectual contributions, and professional service."

(Handbook p. 68). "Each department's faculty have developed standards for satisfactory performance in instructional responsibilities [IR], intellectual contributions [IC] and professional service which were reviewed by the appropriate direct supervisor, dean and the EVPP. Said standards must <u>clearly differentiate between unsatisfactory performance and satisfactory performance in instructional responsibilities, intellectual contributions and professional service</u>." (*Id*.) (emphasis added).

46.     Based on the available evidentiary record, Dr. Babb, Dr. King, and Dr. Terry completely failed to consider Dr. Carr's professional achievements in making the non-renewal decision. Indeed, the reasons cited for the decision are so vague and non-specific that they do not disclose consideration of any factors whatsoever. The decision-makers professed a loss of confidence in Dr. Carr but articulated no rationale for it. They cited a misalignment with expectations, norms, and standards but failed to identify a single expectation, norm, or standard Dr. Carr failed to meet. Similarly, Dr. Abdullat expressed concerns about Dr. Carr's "role perception engagement and fitness with colleagues," but did not cite even one example or any explanation in support of his nebulous criticisms.

47.     In Dr. Terry's March 12 memorandum, he concedes that Dr. Carr was "actively engaged in service activities," but that the senior faculty, associate deans, and dean "do not feel such engagement was positive." No evidence justifies this wholly subjective characterization.

48.     In addition, Dr. Terry cited to "possible budget reduction consideration" as a factor in the non- renewal decision. Such "financial considerations" are not included among those to be considered in making the renewal decision or in adjudication of the appeal, which may explain why no mention of this factor may be found within documentation created prior to March 12. According to publicly available data, although overall University enrollment has declined since 2020, the accounting program has demonstrated continual enrollment growth during that

time. Therefore, one might reasonably surmise that this factor was raised belatedly, insincerely, and in an attempt to justify an otherwise untenable decision not to renew Dr. Carr's appointment.

49.    As required by the Handbook, Dr. Carr submitted the Annual Activity Report and Supplement to Annual Activity Report before the deadline. (Handbook p. 35, Section 2.1). In his Annual Review of Faculty for Calendar Year 2024, which was completed **after** submission of the appeal on March 2, Dr. Carr received a Composite Review score of 3.09. His level of performance in teaching was described as "**Excellent**," (emphasis original), his research performance as "Satisfactory-Excellent," and his performance in service as "Satisfactory-Excellent."

50.    Having demonstrated a complete failure to adequately consider Dr. Carr's professional achievements by the persons involved in the non-renewal decision, Dr. Carr met the *prima facie* showing that a violation of applicable Handbook provisions occurred. And, contrary to Dr. Terry's assertions, Dr. Carr correctly followed the applicable appeal procedure.

51.    On March 13, 2025, Dr. Terry and President Wendler were informed that Dr. Carr had hired legal representation.

52.    On March 18, 2025, Dr. Terry wrote to Dr. Carr presenting two "options:" 1) pursuing the applicable appeal provisions of the Handbook, or 2) invoking the available Grievance Procedures.

53.    Dr. Carr expressed his decision to proceed with his appeal following the procedures outlined in Section 8 (pg. 58) of the Handbook. Dr. Carr desired to avail himself of the procedures contained in Section 8 not as an acceptance of an option presented by Dr. Terry, but in exercise of the plainly applicable relevant provisions of the Faculty Handbook.

54.     To invoke the procedure contained in Section 8 (pg. 58), Terry directed Dr. Carr to "send your appeal letter to President Wendler." As noted above, this step was completed on March 2, 2025, and did not need to be repeated.

55.     Sections 8.2-8.3 (pg. 59) require that notification of the appeal "must be filed with the president" who "shall refer the appeal to a committee of three faculty members chosen at random by the Faculty Senate President from the pool of members of the University's Faculty Grievance Committee." It is then up to the committee to make a determination as to whether the faculty member has made a *prima facie* case that the non-renewal decision was improper under one of three applicable tests. If such a determination is made, the faculty member is entitled to an evidentiary hearing.

56.     On April 2, 2025, more than 15 days after the appeal was filed, President Wendler was informed by Dr. Lal Almas, Dr. Vanessa Fiaud, and Dr. Pat Tyrer (Chair, Preliminary Review Committee) that Dr. Carr had established a *prima facie* case that the decision of non-renewal was made in violation of Carr's academic freedom and without adequate consideration of his record of professional achievement. Further, the Preliminary Review established that Carr's evidence in his Appeal of the Non-Renewal established that a violation had occurred as defined in Section 8.1 of the Appeal Process.

57.     On April 7, 2024, President Wendler appointed an Evidentiary Hearing Committee to review the "grievance" case of Dr. Carr. The appointment letter states that after the committee convenes and selects a committee chair, the evidentiary hearing "shall be scheduled within sixty (60) calendar days from the date the preliminary Review Committee notifies the President that the appeal establishes a prima facie case." Further the letter states, "The committee will have discretion when it comes to requesting additional information and/or testimony."

16

58.     On May 1, 2025, President Wendler sent a Memorandum to Dr. Carr stating that the Evidentiary Hearing Committee "met" to review the appeal and determined that the termination of Dr. Carr's contract was not made in violation of academic freedom or for an illegal reason or without adequate consideration of Dr. Carr's record of professional achievement. Thereafter, President Wendler concurred with the decision and stated, "This response memo completes the appeal process."

59.     On May 28, 2025, Dr. Carr sent a letter to President Wendler objecting to his failure to conduct an evidentiary hearing in which Dr. Carr could participate with a representative of his choice.

60.     At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants, who acted under color of a statute, regulation, custom, or usage of the State of Texas.

61.     Defendants knew or should have known that they were violating Dr. Carr's constitutional and contractual rights by failing to afford the due process protections afforded by law and the Handbook.

62.     Defendants' actions, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

63.     WTAMU subsequently relented and agreed to conduct an evidentiary hearing as required by the Handbook.

64.     On July 30, 2025, an evidentiary hearing was held.

65.     On August 6, 2025, in a split vote of 2-1, the Evidentiary Hearing Committee determined the non-renewal decision did not violate Dr. Carr's academic freedom.

## CAUSES OF ACTION

### COUNT ONE
**Violation of Plaintiff's First Amendment Right to Freedom of Speech
Retaliation
(42 U.S.C. § 1983)**

66.     Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

67.     By expressing his views regarding President Wendler, Defendants retaliated and
are retaliating against Dr. Carr for exercising his First Amendment rights.

68.     Dr. Carr's speech is protected expression.

69.     Defendants took retaliatory and unconstitutional actions against Dr. Carr.

70.     Defendants' retaliatory and unconstitutional actions taken against Dr. Carr
constitute adverse employment actions and violate his right to free speech under the First
Amendment to the U.S. Constitution.

### COUNT TWO
**Violation of Plaintiff's Right to be Free from Unconstitutional Conditions.**

71.     Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

72.     By conditioning Dr. Carr's employment at WTAMU on his willingness to surrender
his constitutional rights, Defendants imposed an unconstitutional condition on him in violation of
his First Amendment rights.

73.     Defendants' actions impose an unconstitutional condition upon faculty members'
right to free speech and their receipt of state benefits.

### COUNT THREE
**Violation of Plaintiff's Fourteenth Amendment Rights to Due Process of Law
42 U.S.C. § 1983**

74.     Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

75.    By terminating Dr. Carr under vague and overbroad standards as a retaliatory action, Defendants violated and are violating Dr. Carr's right to due process of law under the Fourteenth Amendment.

76.    Dr. Carr's speech regarding President Wendler and in discussions within department and college meetings was protected by the Fourteenth Amendment.

77.    By taking adverse employment actions against Dr. Carr, Defendants have punished him for engaging in protected speech.

## COUNT FOUR
**Violation of Plaintiff's Fourteenth Amendment Rights to Procedural Due Process of Law
42 U.S.C. § 1983**

78.    Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

79.    As a professor at WTAMU, Dr. Carr had a property interest in his continued employment.

80.    Procedural due process requires, before Dr. Carr can be terminated, that he be given notice and an opportunity for an evidentiary hearing before an impartial tribunal.

81.    WTAMU's policy requires the University to abide by certain procedures, such as notice and evidentiary hearing, with the right to representation, before Dr. Carr can be terminated.

82.    By failing to give Dr. Carr notice or an opportunity to participate in an evidentiary hearing, with representation, and by failing to follow the University's own procedures, Defendants denied Dr. Carr adequate procedural due process in violation of the Fourteenth Amendment.

## COUNT FIVE
**Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law
42 U.S.C. § 1983**

83.    Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

84.     By retaliating against Dr. Carr for his expression in support of President Wendler, after the faculty vote of no confidence, but not using the same standard to punish professors who expressed opposite views, Defendants violated Dr. Carr's right to equal protection under the Fourteenth Amendment.

85.     Dr. Carr was similarly situated to other professors within the department of Accounting, Economics and Finance, PVECOB, WTAMU, with the exception of the professor who is married to Dr. Terry, the EVPP.

86.     Defendants took no adverse employment actions against professors or other members of WTAMU who participated in the vote of no confidence against President Wendler, but they took adverse employment action against Dr. Carr, who expressed support for President Wendler.

87.     Because Defendants retaliated against Dr. Carr because of his protected expression, placed unconstitutional conditions on his employment and violated his right to due process of law, discriminatory intent is presumed.

88.     Defendant Terry's retaliatory and unconstitutional actions against Dr. Carr burden Dr. Carr's fundamental rights and have no rational basis.

89.     Defendant Terry's retaliatory and unconstitutional actions against Dr. Carr are underinclusive, prohibiting some expression while leaving other expression equally harmful to WTAMU's asserted interests unprohibited.

90.     Defendants took adverse employment actions against Dr. Carr in a discriminatory and unequal manner, granting other professors the right to express their views on issues while denying that right to Dr. Carr, in direct violation of Dr. Carr's equal protection rights.

## COUNT SIX
### Breach of Contract

91.    Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

92.    Defendants breached their contract with Dr. Carr at a minimum by failing to renew Dr. Carr's contract without notice and without any of the procedural protections he was guaranteed under WTAMU policy.

93.    Under Texas law, Defendant Abdullat's written offer for Dr. Carr to join the faculty during the Fall 2024 semester and Dr. Carr's written acceptance formed an enforceable contract between WTAMU and Dr. Carr.

94.    By issuing its non-renewal to Dr. Carr, WTAMU refused to honor that contract.

95.    Defendants have no legal excuse for breaching the contract.

96.    Second, under Texas law, the University's policies constitute an enforceable contract.

97.    By subjecting Dr. Carr to non-renewal without following those procedures, Defendants breached their own policies and thus denied Dr. Carr the protections he was promised when he became a professor at WTAMU.

98.    Defendants have no legal excuse for breaching their own policies.

99.    Plaintiff is entitled to recover reasonable attorney fees because this is a claim on a written contract with the meaning of Tex. Civ. Prac. & Rem. Code § 38.001. As a result of Defendants' breach of the agreement, Plaintiff has been required to retain the services of the undersigned counsel to prosecute this action and is suing for the reasonable and necessary fees and costs he incurs to pursue this present action. All conditions precedent to recovery of the requested attorneys' fees have been fulfilled.

## COUNT SEVEN
### West Texas A&M University violated Title VII
### by discriminating against Dr. Carr's religious beliefs

100.    Dr. Carr incorporates by reference paragraphs 1-65 as if set forth herein.

101.    Title VII prohibits employers from discharging or otherwise discriminating against employees because of their religion, and from causing or attempting to cause an employer to so discriminate, which includes all aspects of religious belief, observance, and practice. 42 U.S.C. § 2000e–(j) and 2(a).

102.    Carr's religious beliefs and practices had no impact on the workplace.

103.    Defendants treated Carr less favorably than similarly situated professors who did not share Carr's religious beliefs and practices.

104.    Dr. Carr asserts that his membership in the Church of Jesus Christ of Latter-Day Saints was a motivating factor in the decision not to renew his contract.

105.    Indeed, it was reported to Dr. Carr that, during discussions regarding the non-renewal decision, he was described as "just another one of those sexist Mormons."

106.    As a result of Defendants' discrimination and retaliation against Dr. Carr for his exercise of protected rights under Title VII, Carr's employment was terminated, and Defendants thereby inflicted substantial monetary and nonmonetary harm on Carr for which he is entitled to declaratory, compensatory, and injunctive relief, including reinstatement and payment of back pay plus interest.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues so triable in this matter.

## PRAYER FOR RELIEF

As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries and

damages for which he is entitled to recover, including but not limited to:

    a.   A declaratory judgment that Defendants violated the First and Fourteenth amendments, and breached their contract with Dr. Carr because he engaged in protected speech and religious belief;

    b.   A preliminary and permanent injunction prohibiting Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf from not enforcing the challenged provisions of their policies;

    c.   Nominal, compensatory, and punitive damages for the violation of Dr. Carr's First and Fourteenth Amendment rights and his contractual rights;

    d.   Back pay, front pay, compensatory damages as well as pre-judgment and post-judgment interest and Dr. Carr's reasonable attorneys' fees, costs, and other costs and disbursements in this action under Title VII, 42 U.S.C. § 1988 and §38.001 *et. seq*. of the Tex. Civ. Prac. & Rem. Code; and

    e.   All other and further relief to which Dr. Carr may be entitled.

Respectfully submitted,

**YOUNG FIRM PC**

By: */s/ Jeremi K. Young*

Jeremi K. Young, TX SBN 24013793
301 S. Polk St., Suite 320
Amarillo, Texas 79101
Tel: (806) 331-1800
Fax: (806) 398-9095
Email:  jyoung@youngfirm.com

**ATTORNEYS FOR PLAINTIFF**

23

Docusign Envelope ID: 6403F911-B743-4C58-955F-484A062D7BA8

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## CHARGE OF DISCRIMINATION

EEOC Form 5A (August 2023)

For Official Use Only – Charge Number:

| | |
|---|---|
| **Personal Information** | First Name: Abraham    MI: H.    Last Name: Carr<br>Address: 7300 Park Ridge Dr.    Apt.:<br>City: Amarillo    County: Randall    State: TX    Zip Code: 79119<br>Phone: 402-312-1702    Home ☐ Work ☐ Cell ☑ Email: abrahamcarr@gmail.com |
| **Who do you think discriminated against you?** | Employer ☑    Union ☐    Employment Agency ☐    Other Organization ☐<br>Organization Name: West Texas A&M University<br>Address: 2501 4th Ave.    Suite:<br>City: Canyon    State: TX    Zip Code: 79016    Phone: 806-651-0000 |
| **Why you think you were discriminated against?** | Race ☐    Color ☐    Religion ☑    Sex ☐    National Origin ☐    Age ☐    Pregnancy ☐<br>Disability ☐    Genetic Information ☐    Retaliation ☐    Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: 11/10/25<br>Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).<br>During the week of February 9, 2025, Associate Deans met with senior faculty and to discuss the continuation of Dr. Carr's appointment. On February 13, Dr. Babb and Dr. King verbally informed Dr. Carr that they would be recommending nonrenewal of his faculty appointment.  Thereafter, Dean Abdullat recommended the nonrenewal of Dr. Carr's faculty appointment to Provost Terry on February 14, 2025.  On February 19, 2025, Dr. Carr received a Memorandum from Provost Terry that non-renewal had been recommended, resulting in Carr's non-continuation of employment after the Spring 2025 semester.<br>In April of 2025, a colleague of Dr. Carr who was present at the February 9th Meeting reported that one of the faculty involved remarked about Dr. Carr that "he's just another one of those sexist Mormons." |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above.  I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: ABRAHAM CARR    Date: 11/10/2025<br>17322ABD1D7648A... |

EXHIBIT

A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/02/2025

**To:** Abraham Carr
7300 Park Ridge Dr
Amarillo, TX 79119

Charge No: 450-2026-01409

EEOC Representative and email:     Kelly Melton
Enforcement Investigator
kelly.melton@eeoc.gov

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2026-01409.

On behalf of the Commission,

_____

for Travis Nicholson
District Director

**EXHIBIT**

**B**

**Cc:**

Dora L Zavala
The Texas A&M University System
301 Tarrow St
College Station, TX 77840

Jeremi Young
Young Firm PC
301 S Polk Suite 320
AMARILLO, TX 79101


Please retain this Notice for your records.