**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| ABRAHAM H. CARR,<br>    *Plaintiff*,<br>v.<br><br>WALTER V. WENDLER, in his individual capacity and official capacity as the President of West Texas A&M University;<br><br>GLENN HEGAR in his official capacity as Chancellor of The Texas A&M University System;<br><br>ROBERT L. ALBRITTON, JAY C. GRAHAM, DAVID C. BAGGETT, JOHN W. BELLINGER, JAMES R. BROOKS, MICHAEL A. HERNANDEZ, III, WILLIAM MAHOMES, KELLEY SULLIVAN GEORGIADES, and R. SAM TORN, in their official capacities as members of THE TEXAS A&M UNIVERSITY SYSTEM BOARD OF REGENTS<br><br>NEIL W. TERRY, in his individual capacity and official capacity as Executive Vice Vice President of Academic Affairs and Provost, West Texas A&M University;<br><br>AMJAD ABDULLAT, in his individual capacity and official capacity as Dean of the Paul and Virginia Engler College of Business, West Texas A&M University;<br><br>JEFFRY S. BABB, in his individual capacity and official capacity as Associate Dean of the Paul and Vioginia Engler College of Business, West Texas A&M University<br><br>ROBERT A. KING, in his individual capacity and official capacity as Associate Dean of the Paul and Virginia Engler College of Business, West Texas A&M University,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:25-cv-00272 |

---

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND BRIEF IN SUPPORT**

---

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief for General Litigation Division

**STEPHANIE A. CRISCIONE HOUSER**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov

Defendants, Walter V. Wendler, in his individual capacity and official capacity as the President ("President Wendler") of West Texas A&M University ("WTAMU"), Glenn Hegar in his official capacity as Chancellor of The Texas A&M University System ("TAMU") ("Chancellor Hegar"), Robert L. Albritton, Jay C. Graham, David C. Baggett, John W. Bellinger, James R. Brooks, Michael A. Hernandez, III, William Mahomes, Kelley Sullivan Georgiades, and R. Sam Torn, in their official capacities as members of TAMU System Board of Regents (collectively "the Board"), Neil W. Terry, in his individual capacity and official capacity as WTAMU Executive Vice President of Academic Affairs and Provost ("Provost Terry"), Amjad Abdullat, in his individual capacity and official capacity as Dean ("Dean Abdullatif") of the Paul and Virginia Engler College of Business ("PVECOB"), WTAMU; Jeffry S. Babb, in his individual capacity and official capacity as the Associate Dean of the PVECOB ("Associate Dean Babb"); and Robert A. King in his individual capacity and official capacity as the Associate Dean of the PVECOB ("Associate Dean King") file this Motion to Dismiss.

The court does not have subject matter jurisdiction over this lawsuit, as the Defendants are immune to suit. Defendants sued in their official capacities are entitled to sovereign immunity, as Dr. Carr does not and cannot satisfy the requirements to overcome their immunity. Defendants President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are also sued in their individual capacities and are entitled to qualified immunity. The acts alleged are not so outside the bounds of law that it can reasonably be said to have waived said immunity.

Furthermore, even if the Court had subject matter jurisdiction, Dr. Carr does not state a claim upon which relief can be granted. He states he "exercised his First Amendment rights," but he made his speech in the course of his employment, which WTAMU is empowered to regulate, nor does Dr. Carr allege that the alleged speech caused the nonrenewal. Dr. Carr's employment

with WTAMU did not constitute a protected property interest to require WTAMU to give him due process. Even so, WTAMU provided multiple opportunities for Dr. Carr to be heard—they simply did not go in his favor.

In addition, Dr. Carr claims Defendants breached a contract with him by failing to renew him, but the contract at issue was honored and properly terminated. Finally, the sole basis for his religious discrimination claim is a singular statement, made by an unidentified faculty member and relayed to Dr. Carr by another unidentified faculty member, calling him a "sexist Mormon," which he claims caused his nonappointment. Dr. Carr does not allege that one of his bona fide beliefs as a member of the Church of Jesus Christ of Latter-Day Saints ("LDS") conflicted with an expectation of his employment and WTAMU nonrenewed his appointment because of that conflict. This complaint should be dismissed in its entirety. Defendant's brief in support of this Motion continues below.

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... v

TABLE OF AUTHORITIES ............................................................................................... vi

FACTS ................................................................................................................................. 1

ARGUMENTS AND AUTHORITIES................................................................................. 2

    I.    The court lacks subject matter jurisdiction over Defendants and Dr. Carr's claims should be dismissed. ..................................................................................................... 4

        A.    Plaintiff lacks standing against the Board of Regents and Chancellor Defendants........ 4

        B.    President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are protected by qualified immunity. ..................................................................... 5

            1.    Defendants are entitled to qualified immunity on Dr. Carr's First Amendment Retaliation claim. ......................................................................................................... 5

            2.    Defendants are entitled to qualified immunity on Dr Carr's procedural due process claim...................................................................................................................... 8

            3.    Defendants are entitled to qualified immunity on Dr. Carr's substantive due process claim...................................................................................................................... 9

            4.    Defendants are entitled qualified immunity on Dr. Carr's equal protection claim... 10

            5.    Defendants are entitled to official immunity on Plaintiff's breach of contract claim.12

    II.    Dr. Carr fails to state a claim upon which relief can be granted....................................... 12

        A.    Dr. Carr does not state a claim for Free Speech retaliation. ........................................ 13

        B.    Dr. Carr does not state a claim for violations of his substantive due process rights. ... 13

        C.    Dr. Carr does not state a claim for violations of his procedural due process rights. .... 14

        D.    Dr. Carr does not state a claim for violation of his equal protection rights. ................. 14

        E.    Dr. Carr does not state a claim for breach of contract. ................................................. 15

        F.    Dr. Carr does not state a claim for religious discrimination under Title VII................ 16

        G.    Dr. Carr does not state a claim for harassment under Title VII. ................................... 17

        H.    Dr. Carr does not state a claim for retaliation under Title VII...................................... 18

    III.    Dr. Carr seeks remedies that are unavailable to him. ..................................................... 18

PRAYER............................................................................................................................ 19

CERTIFICATE OF SERVICE ......................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Alvarez-Diemer v. Univ. of Tex. - El Paso*,
258 F. App'x 689 (5th Cir. 2007) ..................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................4

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972) ...................................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 550 (2007) ....................................................................................................17

*Bernard Johnson, Inc. v. Continental Constructors, Inc.*,
630 S.W.2d 365 (Tex.App.—Austin 1982, writ ref'd n.r.e.) ........................................15

*Bernard v. L.A. Cty. Metro. Transp. Auth.*,
2024 LX 110348 (C.D. Cal. 2024) ...............................................................................17

*Bishop v. Arcuri*,
674 F.3d 456 (5th Cir. 2012) .........................................................................................5

*Bisong v. Univ. of Houston*,
2006 WL 2414410 (S.D. Tex. 2006) ............................................................................12

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012) .........................................................................................3

*Buchanan v. Alexander*,
919 F.3d 847, 853 (5th Cir.) *cert. denied* (2019) .....................................................5, 7

*Castlino v. Thomas*,
141 Fed. Appx. 255 (5th Cir. 2005) .............................................................................18

*City of Lancaster v. Chambers*,
883 S.W.3d 650 (Tex. 1994) ........................................................................................12

*City of Newport v. Fact Concerts*,
453 U.S. 247 (1981) ....................................................................................................18

*Connelly v. Comptroller of the Currency*,
876 F.2d 1209 (5th Cir. 1989) .......................................................................................5

*Connick v. Myers*,
461 U.S. 138 (1983) ....................................................................................................11

*Cunningham v. Castloo*,
983 F.3d 185 (5th Cir. 2020) .........................................................................................5

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) .......................................................................................16

*Duke v. N. Tex. State Univ.*,
469 F.2d 829 (5th Cir. 1972) .........................................................................................4

*Engquist v. Oregon Dept. of Agr.*,
553 U.S. 591 (2008) ....................................................................................................11

*Felton v. Polles*,
   315 F.3d 470 (5th Cir. 2002).................................................................................16

*Foley v. Univ. of Houston Sys.*,
   355 F.3d 333 (5th Cir. 2003)...................................................................................7

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ...............................................................................................6

*Garza v. Tex. Children's Hosp.*,
   2018 U.S. Dist. LEXIS 173062 at * 18 (S.D. Tex. Aug. 14, 2018)...........................17

*Good v. Curtis*,
   601 F.3d 393 (5th Cir. 2010)...................................................................................5

*Harris v. Forklift Sys.*,
   510 U.S. 17 (1993) ................................................................................................17

*Hill v. Heritage Resources,*
   964 S.W.2d 89 (Tex. App.—El Paso 1997, pet. denied) ...........................................19

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998)..................................................................................2

*In re Paxton*,
   60 F.4th 252 (5th Cir. 2023)....................................................................................4

*Lane v. Franks*,
   573 U.S. 228 (2014) ................................................................................................6

*Lewis v. Bd. Of Supervisors of La. State. Univ.*,
   134 F.4th 286 (5th Cir. 2025)................................................................................18

*Lindquist v. City of Pasadena*,
   669 F.3d 225 (5th Cir. 2012).................................................................................11

*Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010)...................................................................................1

*Lowery v. Mills*,
   157 F.4th 729 (5th Cir. 2025)..................................................................................3

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ...........................................................................................9, 14

*McLin v. Twenty-First Jud. Dist.*,
   79 F.4th 411 (5th Cir. 2023)....................................................................................4

*Melanson v. Navistar, Inc.*,
   2014 U.S. Dist. LEXIS 123113 (N.D. Tex. Sept. 4, 2014)........................................15

*Morgan v. Swanson*,
   755 F.3d 757 (5th Cir. 2014)...................................................................................5

*Morin v. Caire*,
   77 F.3d 116 (5th Cir. 1996).....................................................................................3

*Naverez v. United States*,
   957 F. Supp. 884 (W.D. Tex. Mar. 12, 1997) ............................................................3

*Priester v. Lowndes County*,
   354 F.3d 414 (5th Cir. 2004).................................................................................11

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001).............................................................................................2

*Reyes v. Sazan*,
168 F.3d 158 (5th Cir. 1999).............................................................................................3

*Schwartz v. Adm'rs of the Tulane Educ. Fund,*
2020 LX 98243 at * 4 (E.D. La. Mar. 2, 2020)...........................................................16

*Shaboon v. Duncan*,
252 F.3d 722 (5th Cir. 2001)...........................................................................................12

*Smith v. City of Bastrop*,
2023 U.S. App. LEXIS 8648 (5th Cir. 2023)...............................................................9

*Sorenson v. Ferrie*,
134 F.3d 325 (5th Cir. 1998).............................................................................................5

*Spuler v. Pickar*,
958 F.2d 103 (5th Cir. 1992).............................................................................................8

*Staheli v. Univ. of Miss.*,
854 F.2d 121 (5th Cir. 1988).............................................................................................8

*Tex. Entm't Ass'n v. Hegar*,
10 F.4th 495 (5th Cir. 2021)...........................................................................................11

*Thomas v. Link Staffing*,
2019 U.S. Dist. LEXIS 19965 (S.D. Tex. Jan. 8, 2019) ..............................................16

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ........................................................................................................11

*West v. Triple B Servs., LLP*,
264 S.W.3d 440 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .............................15

*Wetherbe v. Tex. Tech. Univ. Sys.*,
138 F.4th 296 (5th Cir. 2025).............................................................................................6

*Wisconsin v. Constantineau*,
400 U.S. 433 (1971) ..........................................................................................................9

*Wren v. Towe*,
130 F.3d 1154 (5th Cir. 1997).........................................................................................12

## Statutes

42 U.S.C. Section 1983.............................................................................................3, 4, 18

## Rules

Fed. R. Civ.P. 12(b)(6)...........................................................................................................3

## FACTS

Dr. Carr was employed as an assistant professor of accounting in PVECOB starting Fall 2024.[1] Dkt. 3 ¶¶ 28-29; MTD APPX 00190. His position was a non-tenured tenure track appointment subject to a probationary period not to exceed seven years prior to consideration for tenure. *Id* ¶ 28; MTD APPX 00004. Tenure is not granted until the end of a seven-year probationary period and is not automatic. *Id*. Notice of nonrenewal of a tenure-track faculty member in their first year of employment must be given by March 1 of the first year of academic probationary service. *Id.* Tenure-track faculty are renewed on a yearly basis via an annual letter of appointment. *Id.* Dr. Carr was not renewed after his first year at WTAMU, the 2024-2025 school year, based on various concerns about his ability to successfully progress in his probationary period. Dkt. 3 ¶ 35; MTD APPX 00193. Dr. Carr only had the right to appeal if the decision not to renew was based on a violation of academic freedom, discrimination, or inadequate consideration of professional achievement. *Id* ¶ 38; MTD APPX 00007.

Carr contends that his non-renewal was based on improper or unlawful reasons. At a faculty meeting during Dr. Carr's 2024-2025 appointment, Dr. Carr contends that he expressed approval of President Wendler. *Id.* ¶ 31. Thereafter, sometime between Sunday, February 9, 2025, and Thursday, February 13, 2025, Carr contends Associate Deans Babb and King met with senior PVECOB faculty to discuss Dr. Carr's continued appointment. *Id.* ¶ 34. Dr. Carr alleges that at this faculty meeting, he heard that an unnamed faculty member—not any of the named Defendants—said that Dr. Carr was a "sexist Mormon." *Id*. ¶ 40. Following this meeting, Associate Deans Babb and King recommended that Dr. Carr's appointment should not be renewed, and Dean

---

[1] Documents referenced in pleadings but not attached to pleadings may be attached to a Motion to Dismiss when they are central to the complaint. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Abdullat concurred MTD APPX 00196. *Id.* Dr. Carr received formal notice of his nonrenewal from Provost Terry on February 19, 2025. *Id.* Dr. Carr appealed the decision. *Id*; MTD APPX 00197-201.

Two separate evidentiary hearings were held for Dr. Carr's appeal of his non-renewal. *Id. See also* MTD APPX 00202 235-26. Both hearing committees independently reviewed the evidence and arguments, and both committees ultimately determined that the decision not to renew Dr. Carr did not violate Dr. Carr's academic freedom, was not for an illegal reason, and was not without adequate consideration of his record of professional achievement. *Id* ¶ 64-65; MTD APPX 00202 235-26.

On November 11, 2025, Dr. Carr submitted a charge to the Equal Employment Opportunity Commission ("EEOC") related to his claim of religious discrimination *Id.* at ¶ 25, Exhibit A. On December 2, 2025, the EEOC issued its Right to Sue letter. *Id.* at ¶ 26, Exhibit B. This lawsuit was filed two weeks later.

## ARGUMENTS AND AUTHORITIES

Dr. Carr's lawsuit should be dismissed in its entirety. Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court does not have statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A court must consider a motion under 12(b)(1) before addressing any other pending motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff lacks standing to sue which deprives the Court of subject matter jurisdiction. In addition, President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are sued in their individual capacities but are entitled to qualified immunity, which also deprives the Court of subject matter jurisdiction.

Even if this Court has jurisdiction, Dr. Carr fails to state a claim upon which relief can be granted. A motion under Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. When considering a motion to dismiss the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). Conclusory allegations and naked assertions are insufficient; the complaint must contain sufficient facts to state a plausible claim for relief. *Lowery v. Mills*, 157 F.4th 729, 744 (5th Cir. 2025).

When a plaintiff sues a public official under 42 U.S.C. 1983 like Dr. Carr does here, the district court must insist on heightened pleading by the plaintiff. *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury. *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). The absence of any factual allegations against a named defendant entitles that defendant to a Rule 12(b)(6) dismissal. *Naverez v. United States*, 957 F. Supp. 884, 889 (W.D. Tex. Mar. 12, 1997).

At the outset, while Chancellor Hegar is named in the lawsuit, not one single factual allegation is made towards him. Nor does Dr. Carr make any specific allegations regarding any specific member of the Board. As there are no factual pleadings related to these defendants' involvement, they must be dismissed. As for the remaining defendants, President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King, it is clear that they are entitled to qualified immunity.

I.     **The court lacks subject matter jurisdiction over Defendants and Dr. Carr's claims should be dismissed.**

A plaintiff has the burden of proof to plead jurisdiction. *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). A defendant should raise immunity at the earliest possible time. *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023). Courts are reticent to interfere with the day-to-day operation of universities. *Duke v. N. Tex. State Univ.*, 469 F.2d 829, 838 (5th Cir. 1972).

Plaintiffs' claims against the Texas A&M System Board of Regents and Chancellor (together, the "A&M System Defendants") are jurisdictionally barred for lack of standing. Furthermore, WTAMU President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are sued in their individual capacities and are entitled to qualified immunity, as their actions are not so outrageous as to have waived said immunity.

A.     **Plaintiff lacks standing against the Board of Regents and Chancellor Defendants.**

Dr. Carr seeks injunctive relief enjoining the A&M System Defendants. But because vicarious liability does not apply to Section 1983 claims, Dr. Carr "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, beyond superficially naming these individuals as parties, Dr. Carr alleges no facts whatsoever that tie the A&M System Defendants to any alleged harm at issue in this lawsuit, nor explain how they can redress any harm allegedly caused to Dr. Carr in his non-renewal as a non-tenured tenure track faculty member at WTAMU. Accordingly, Dr. Carr's claims against the A&M System Defendants should be dismissed.

**B.    President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are protected by qualified immunity.**

President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are sued in their individual capacities as well as their official capacities. Dr. Carr's claims against these individuals fail as they are protected by qualified immunity. School officials are rarely denied immunity from liability arising out of First Amendment disputes. *Morgan v. Swanson*, 755 F.3d 757, 660 (5th Cir. 2014). Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Cunningham v. Castloo*, 983 F.3d 185 (5th Cir. 2020). A law is only deemed to be clearly established if the contours of the right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). In short, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). It is not sufficient for a court to find a violation of a right arguably occurred. *Connelly v. Comptroller of the Currency,* 876 F.2d 1209, 1212 (5th Cir. 1989). The court must decide whether the conduct was objectively reasonable. *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998).

**1.    Defendants are entitled to qualified immunity on Dr. Carr's First Amendment Retaliation claim.**

When a public university professor asserts a First Amendment claim, the second and third elements are analyzed under the *Pickering-Connick* balancing standard. The standard requires that the professor show they were: 1) fired for speech that is a matter of public concern, and 2) their interest in the speech outweighed the university's interest in regulating the speech. *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir.) *cert. denied*, 140 S. Ct. 432, 205 L. Ed. 2d 264 (2019). If

an employee spoke on a matter of public concern, there is no First Amendment protection if that speech was made in furtherance of a public employee's official duties. *Id.* To be made in the furtherance of the employee's duties, the speech must be within the scope of an employee's duties, not whether it merely concerns those duties. *Lane v. Franks*, 573 U.S. 228, 237 (2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). This is a threshold inquiry that must be satisfied before a court may examine a plaintiff's claims further. *Wetherbe v. Tex. Tech. Univ. Sys.*, 138 F.4th 296, 303 (5th Cir. 2025).

Dr. Carr's pleadings indicate that the speech that is the subject of this lawsuit was made within the scope of his duties. As a professor, he is required to attend faculty meetings. Dr. Carr explicitly states that he "publicly praised" President Wendler during a visit to PVECOB. Dkt. 3 ¶ 31. Dr. Carr notes that this support occurred after a vote of no-confidence against President Wendler. *Id.* ¶ 30. Whether or not this is true or not, it does not rise to the level of speech protected under the First Amendment. Votes of no-confidence by faculty certainly implicates the faculty's dissatisfaction with President Wendler's performance. By expressing support for President Wendler to his co-workers during an internal meeting with President Wendler during his visit to PVECOB, Dr. Carr would have been speaking as a member of the PVECOB faculty. As Dr. Carr would have been speaking as an employee of a state university, his claim of First Amendment retaliation cannot stand and President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are entitled to qualified immunity.

Even if the Court were to agree that Dr. Carr has pled that his speech was not as an employee, his claims still fail because Dr. Carr fails to plausibly plead his speech involved a matter of public concern, his interest in speaking outweighed WTAMU's interest in promoting efficiency; and the protected speech motivated President Wendler's, Provost Terry's, Dean Abdullat's,

Associate Dean Babb's, and Associate Dean King's conduct. For speech to touch a matter of public concern, courts look at the form, content, and context of the statement. *Buchanan*, 919 F.3d at 853. (5th Cir. 2019). Speech may involve a matter of public concern when it involves an issue of social, political, or other interest to a community. *Id.* In order for plaintiff to plead a plausible First Amendment violation, he must be specific in his allegations and identify when the statements were made, to whom they were made, whether they were oral or written, and the content of those statements. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003). A plaintiff cannot overcome qualified immunity without such pleading. *Id.* Here, Dr. Carr has only alleged facts surrounding the context of his statement—that he was in a faculty meeting at PVECOB. Dkt. 3 ¶ 31. He does not plead any facts to support the content of his statement, merely that he orally "supported" President Wendler, but fails to identify when the statements were made and the content of the statements.

Dr. Carr further fails to plausibly plead a First Amendment retaliation claim because he does not plead that any of the actions taken by President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King were related to his support of President Wendler. He assumes that Dean Abdullat's comment that Dr. Carr should "calm down" his speech meant to calm down his support for President Wendler, with nothing more. There is no plausible pleading that Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King had any knowledge of the statement about President Wendler. More fantastically, he is assuming that President Wendler—the very man he supported—was not in favor of his "support" and thus denied his appeal and concurred with the nonrenewal decision based on this very same protected speech.

By the bare-bones allegations in the complaint, Dr. Carr does not allege a matter of public concern or causal link between his speech and the nonrenewal and qualified immunity remains

intact. Taking all of the above into account, it cannot be said that any of the individually named Defendants— Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King— could arguably have known their conduct violated the First Amendment. Dr. Carr's claims should be dismissed.

### 2.    Defendants are entitled to qualified immunity on Dr Carr's procedural due process claim.

Dr. Carr cannot overcome the Defendants' qualified immunity, as there was no protected property interest to give rise to a need for procedural due process. If there is no protected property interest, there is no process due. *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992). It is black letter law that teachers without tenure are *not* assured of continuing employment. *Staheli v. Univ. of Miss.*, 854 F.2d 121, 124 (5th Cir. 1988) (emphasis in original). *See also Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). Furthermore, "[e]stablishment of a formal tenure process generally precludes a reasonable expectation of continued employment for non-tenured faculty." *See Spuler*, 958 F.2d at 107.

It is undisputed that WTAMU had a formal tenure process, and that Dr. Carr was not tenured and was subject to a probationary period. Therefore, Dr. Carr had no property interest in his reappointment or continued employment during that probationary period. He was allowed to continue out his first academic year of his appointment, and he was notified of WTAMU's decision within the appropriate time frame for non-renewal. He further was provided with two separate evidentiary panels who reviewed the nonrenewal. Without a property interest, President Wendler, Provost Terry, Dean Abdullat, Associate Dean Babb, and Associate Dean King are entitled to qualified immunity and Dr. Carr's claims should be dismissed.

Similarly, Dr. Carr has not demonstrated that he was deprived of a cognizable liberty interest. The Supreme Court has recognized that, in very limited circumstances, a public

university's decision not to rehire an individual would be subject to procedural due process constraints. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. at 573, 92 S.Ct. 2701 (1972). Specifically, "[w]here a person's good name, reputation, honor, or integrity is at stake ... notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). If, however, the state "did not make any charge against him that might seriously damage his standing and associations in his community," such as "that he had been guilty of dishonesty, or immorality," it is not a violation of his due process rights if they decline to rehire him without affording him procedure. *Bd. of Regents*, 408 U.S. at 573, 92 S.Ct. 2701. Defendant has made no such charge against Dr. Carr.

Moreover, even when a property interest is implicated, all that is required is an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Here, Dr. Carr received not one, but two, opportunities to be heard by an evidentiary panel; and despite his arguments to those panels otherwise, both times his non-renewal was upheld. MTD APPX 00202 235-26. Accordingly, this Court must dismiss Plaintiff's procedural due process claim.

### 3. Defendants are entitled to qualified immunity on Dr. Carr's substantive due process claim.

For similar reasons as the preceding section, Dr. Carr does not state a constitutional violation of substantive due process to overcome qualified immunity. Substantive due process requires a finding that 1) a governmental entity deprived the plaintiff of a constitutionally protected property interest; and 2) the government's deprivation lacks a rational basis. *Smith v. City of Bastrop*, No. 21-51039, 2023 U.S. App. LEXIS 8648 at *18 (5th Cir. 2023). No substantive due process violation exists where it is 'at least debatable' that a rational relationship with a conceivable legitimate government interest exists." *Id.*

Dr. Carr never had a property right in his reappointment after the 2024-2025 academic year. Even if Dr. Carr had a property interest, WTAMU provided a rational basis for the nonrenewal. Defendants cited several concerns including fitness with colleagues as reasons for the nonrenewal. Fitness with colleagues is extremely important, and universities have a rational desire to have their faculty get along. *See, e.g. Alvarez-Diemer v. Univ. of Tex. - El Paso*, 258 F. App'x 689 (5th Cir. 2007) (finding the lack of collegiality as a legitimate, nondiscriminatory reason for not hiring professor in Title VII action). Indeed, according to WT's Faculty Handbook, a faculty member's fitness and professional collegiality is a factor of faculty advancement to be considered in the promotion and tenure process. *See* MTD APPX 00053 ("In general, to be awarded tenure at West Texas A&M University, a faculty member must display a strong commitment to teaching at an excellent level, significant intellectual and/or creative contributions, as appropriate to the discipline, that reflect a high level of achievement in the field, quality service to the profession, university, and community, **and an attitude of professional collegiality**") (emphasis added). *See also* MTD APPX 00065 ("To be awarded tenure at West Texas A&M University, a faculty member must display excellence in teaching and a strong commitment to the intellectual growth of students, a high level of achievement in scholarly and/or creative contributions to the academic discipline as evidenced by external (outside of the department) peer evaluators, a record of quality service to the university, the profession and/or the community, **and an attitude of professionalism and collegiality that contributes to the professional reputation of the faculty member as well as the University**") (emphasis added). Dr. Carr's claims should be dismissed with prejudice.

### 4. Defendants are entitled to qualified immunity on Dr. Carr's equal protection claim.

Dr. Carr does not sufficiently plead a claim for violations of equal protection as he does not plead a proper comparator. To establish a claim under the Equal Protection Clause, a plaintiff

must allege that they received treatment different from similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). To determine whether persons or groups are similarly situated, the Court must determine whether they are in all relevant respects alike. *Tex. Entm't Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021).

Because Dr. Carr does not allege that he was treated differently because of a protected characteristic such as race or gender, he must allege a so-called "class-of-one" equal protection claim. A so-called "class of one" requires the plaintiff show 1) they were intentionally treated differently from others similarly situated and 2) there was no rational basis for the difference in treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)). This type of equal protection claim has been rejected by the Supreme Court in the public employment context. *See Engquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 607 (2008); *Olech*, 528 U.S. at 564. This is because the Supreme Court believed it would "constitutionalize the employee grievance." *Connick v. Myers*, 461 U.S. 138, 154 (1983).

Ignoring the obvious problem of a class-of-one claim against a state university, Dr. Carr's claim still fails because he was not similarly situated to his comparators. Dr. Carr concludes that he was nonrenewed because of his speech supporting President Wendler as compared to the faculty who issued the vote of no-confidence. Dr. Carr ignores his own pleading—that he was probationary tenure track professor and the faculty who made the vote of no confidence included tenured, full-time faculty. He was not similarly situated to those who cast the vote of no confidence. Dr. Carr's claim for equal protection violations should be dismissed.

**5.  Defendants are entitled to official immunity on Plaintiff's breach of contract claim.**

Plaintiff's state common law claim for breach of contract against "all Defendants" also is barred by official immunity. "Texas law of official immunity is substantially the same as federal qualified immunity law." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). Texas official immunity skips the "clearly established law" step and "focuses solely on the objective legal reasonableness of the officer's conduct." *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001). Under that test, a defendant is immune "if any reasonably prudent offic[ial] could have believed the [defendant's] conduct was consistent with the plaintiff's rights." *City of Lancaster v. Chambers*, 883 S.W.3d 650, 656-57 (Tex. 1994).

Although Dr. Carr appears to assert this claim against all of the individual Defendants, he has not pleaded a contract with any of the individuals. *See Bisong v. Univ. of Houston*, 2006 WL 2414410, at *3 (S.D. Tex. 2006) (granting motion to dismiss where "allegations only support the existence of a contract between plaintiff and the University of Houston, not plaintiff and individual defendants"). Furthermore, even he could do so (he cannot), Dr. Carr's breach of contract claim against the individuals is barred by official immunity as he cannot meet the heightened pleading standard to show that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts with respect to the non-renewal of a non-tenured tenure track faculty member during his probationary period.

## II.  Dr. Carr fails to state a claim upon which relief can be granted.

Even if Dr. Carr's claims survive the immunity challenges, he does not state a claim upon which relief can be granted. He does not plead sufficient facts that would establish any plausible claim, nor does he plead facts that entitle him to the relief he seeks.

A. **Dr. Carr does not state a claim for Free Speech retaliation.**

Dr. Carr does not plead a viable claim for free speech retaliation. Dr. Carr concludes that he "exercised his First Amendment rights while employed at WTAMU" and that "certain individuals took retaliatory action." Dkt. 3 ¶ 6. However, it is clear from the pleading that Dr. Carr's speech was not a matter of public concern, as it was made in his capacity as an employee of WTMAU. Dr. Carr voiced support of President Wendler *after a vote of no confidence*, meaning his speech was directly related to the actions of his fellow employees, not the public at large.

In addition, there is no plausible pleading that this comment in any way motivated the nonrenewal. Dr. Carr alludes to the fact that some faculty members —not Associate Dean Babb and Associate Dean King specifically—were "upset" with his statement. Dkt. 3 ¶ 32. This vague pleading requires the Court to make an impermissible leap that the statement was so egregious that it triggered the nonrenewal, and that, nonsensically, President Wendler was also somehow in on the retaliation and so motivated by Dr. Carr's "praise" for him that he upheld the non-renewal. Dr. Carr simply concludes the two are connected, which is insufficient to survive a 12(b)(6) challenge.

B. **Dr. Carr does not state a claim for violations of his substantive due process rights.**

Plaintiff does not state a claim for substantive due process. As stated *supra* in Section I.B.2, he does not have a cognizable property interest in his renewed appointment. Without a cognizable property interest, no process was due, and even if process was due, Defendants provided adequate and ample rational bases for the nonrenewal. Dr. Carr does not state a claim upon which relief can be granted.

**C.    Dr. Carr does not state a claim for violations of his procedural due process rights.**

Dr. Carr claims he had a property interest in his continued employment, and thus Defendant's non-renewal without a hearing violated his rights. Dkt. 3, ¶¶79-82. However, this is contrary to not only the facts as pleaded, but to the binding Supreme Court and Fifth Circuit precedent, and thus the claim should be dismissed. *See supra.* Dr. Carr's makes the conclusory allegation that he was denied a "constitutional" right to be present at an evidentiary hearing and to representation at a hearing. Dkt. 3 ¶ 7. First, it is clear that there is no constitutional right to a "live" hearing akin to a trial or other court proceeding in order to comport with due process. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The judicial model of an evidentiary hearing is neither a required, nor even the most effective, model of decision-making in all circumstances"). Here, Dr. Carr was given notice of the non-renewal decision, a reasonable time to submit a written response to the charge (which he did), and an opportunity to provide evidence in support of his position prior to the hearing. Second, even though he was not entitled to anything more than that, the University accommodated his request and agreed to provide him a *second live hearing* in response to his "objections" following the first panel's recommendation to deny his appeal. Dkt. 3, ¶¶58-59, 63-65. Therefore, Dr. Carr was provided a *second* hearing, and a second independent panel again determined by a majority decision that Dr. Carr's academic freedom was not violated. Dkt. 3, ¶¶63-65. In short, he was given *additional* process despite the lack of Defendants' need to do so, and now complains that he did not get any due process.

**D.    Dr. Carr does not state a claim for violation of his equal protection rights.**

Dr. Carr claims that Defendants violated the equal protection clause by treating him differently than faculty members who participated in the vote of no confidence against President

Wendler. Dkt. 3 ¶¶ 84-86. Again, much like the reasoning *supra* in Section I.B.4 Defendants did not violate Dr. Carr's equal protection rights. As a result, he has failed to state a claim.

### E.    Dr. Carr does not state a claim for breach of contract.

To state a claim for breach of contract under Texas law, a plaintiff must show: 1) there was a valid, enforceable contract, 2) the plaintiff tendered performance or was excused from doing so, 3) the defendant breached the terms of the contract, and 4) the plaintiff sustained damages as a result of the defendant's breach." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A person who is not a party to a contract cannot be sued for breach of said contract. *Bernard Johnson, Inc. v. Continental Constructors, Inc.,* 630 S.W.2d 365, 369 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

Dr. Carr alleges that the named Defendants breached the contract, but they were not parties to the contract. As Dr. Carr admits, his contract was with WTAMU, not individual Defendants. *See* Dkt. 3 ¶ 93 ("Defendant Abdullat's written offer for Dr. Carr to join the faculty during the Fall 2024 semester and *Dr. Carr's written acceptance formed an enforceable contract between WTAMU and Dr. Carr*.") (emphasis added). As none of the individual defendants are proper parties to the lawsuit, Dr. Carr fails to state a claim upon which relief can be granted. Moreover, there was no breach of the contract. As Dr. Carr pleads, the appointments are one-year contracts to be renewed at specific time intervals. Dr. Carr was notified of the nonrenewal pursuant to the contract and was allowed to finish teaching out the academic year.

In addition, Dr. Carr claims that WTAMU policy and TAMU System Policy creates a contract between him and WTAMU to follow said policies. The Northern District of Texas does not recognize employee handbooks as contracts. *Melanson v. Navistar, Inc.*, Civil Action No. 3:13-CV-2018-D, 2014 U.S. Dist. LEXIS 123113 (N.D. Tex. Sept. 4, 2014). Nor do courts in the Fifth

Circuit recognize university policies as binding contracts. *See Schwartz v. Adm'rs of the Tulane Educ. Fund,* No. 18-10865, 2020 LX 98243 at \* 4 (E.D. La. Mar. 2, 2020) (holding a university procedure handbook is " unilateral expression of company policy, and, as such, the publishing of that policy does not evidence a meeting of the minds inasmuch as the terms of such a handbook were not bargained for and any benefits conferred by it are mere gratuities.") Dr. Carr has therefore failed to state a claim for breach of contract, and his claim should be dismissed.

### F.    Dr. Carr does not state a claim for religious discrimination under Title VII.

Finally, Dr. Carr does not state a claim for religious discrimination under Title VII. To plead a prima facie case of religious discrimination, Dr. Carr must plead: 1) he held a bona fide religious belief, 2) the belief conflicted with a requirement of his employment, 3) WTAMU was informed of her belief, and 4) he suffered an adverse employment action because he failed to comply with the conflicting employment requirement. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014).[2]

*Thomas v. Link Staffing*, Civil Action No. 4:17-CV-3902, 2019 U.S. Dist. LEXIS 19965 (S.D. Tex. Jan. 8, 2019) is instructive. In *Thomas*, the Southern District of Texas granted a Motion to Dismiss for failure to state a claim on religious discrimination. The court noted that the complaint was devoid of facts that plausibly indicated "any bona fide religious belief that conflicted with an employment requirement." *Id.* at \* 11. There is no factual allegation whatsoever that one of Dr. Carr's bona fide beliefs as a member of LDS conflicted with a requirement of his role as a professor at WTAMU. In essence, Dr. Carr alleges that just the fact that he was a member of LDS caused his nonrenewal. Dkt. 3 ¶ ¶101-106. Furthermore, Dr. Carr alleges that he was

---

[2] Defendants do not address any qualified immunity arguments in connection with Dr. Carr's claims for violations of Title VII. As plaintiffs can only sue employers for violations of Title VII and not individuals, qualified immunity would be inapplicable. *See Felton v. Polles*, 315 F.3d 470, 478 (5th Cir. 2002).

treated less favorably than similarly situated professors but does not identify any comparator outside LDS who was treated differently. Dkt. 3 ¶ 103. *See also Bernard v. L.A. Cty. Metro. Transp. Auth.,* No. 2:23-cv-06384-SB (DTB), 2024 LX 110348 (C.D. Cal. 2024) (dismissing Title VII claim for religious discrimination where the plaintiff failed to allege facts sufficient to conclude that any action was based on his religious denomination).

Likewise, he does not plead sufficient facts that establish that the decisionmakers were influenced by discriminatory animus. Dr. Carr claims "defendants discriminated against Dr. Carr based on his religious beliefs …by complaining about Dr. Carr's religious beliefs which caused Dr. Carr's termination." Dkt. 3 ¶ 9. However, Dr. Carr's allegations—even if true—do not allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 550, 547 (2007). Indeed, the alleged comment of an anonymous faculty member that he was "just another one of those sexist Mormons" is not attributed to any of the Defendants in this lawsuit. *Id* at ¶¶ 40, 105. Dr. Carr does not plead how the named Defendants were motivated by anti-Mormon bias or his membership in the LDS. Dr. Carr's claims under Title VII fail.

### G.    Dr. Carr does not state a claim for harassment under Title VII.

Dr. Carr alludes to a claim of harassment under Title VII. *See id* at ¶ 9. However, to plead a viable claim of harassment under Title VII, the conduct must be related to a protected characteristic and "severe or pervasive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). Dr. Carr pleads exactly one allegedly disparaging comment related to his religion. Offhand comments and isolated incidents will not amount to a harassment claim. *Id. See also Garza v. Tex. Children's Hosp.*, No. H-16-0962, 2018 U.S. Dist. LEXIS 173062 at * 18 (S.D. Tex. Aug. 14, 2018) (finding a sole comment about "crazy Christians" insufficient to constitute severe conduct to support a

claim of a hostile work environment based on religion). Here, Dr. Carr was told from a third party that another third party—not any Defendant sued here—called him a "sexist Mormon." Dr. Carr seeks to pursue a harassment claim on one comment by an unknown professor. This is legally insufficient for a harassment claim, and it should be dismissed.

### H.   Dr. Carr does not state a claim for retaliation under Title VII.

Dr. Carr further makes a passing statement that Defendants "retaliated" against him for his membership in the LDS. *Complaint* at ¶ 106. However, in the Title VII context, to establish a prima facie case of retaliation, one must plead they engaged in "protected activity." *Lewis v. Bd. Of Supervisors of La. State. Univ.*, 134 F.4th 286, 295 (5th Cir. 2025) Protected activity solely includes "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* Nowhere in his pleading does Dr. Carr allege that he participated in any sort of protected activity or made a statement opposing an unfair employment practice. While the charge of discrimination can be considered protected activity, Dr. Carr filed his charge after the nonrenewal. Protected activity that occurred after the adverse employment action cannot be said to have caused the adverse employment action. *See Castlino v. Thomas*, 141 Fed. Appx. 255, 257 (5th Cir. 2005). As a result, Dr. Carr does not state a claim for retaliation, and it should be dismissed.

### III.   Dr. Carr seeks remedies that are unavailable to him.

Even if the Court agrees that Dr. Carr has pled jurisdiction and viable claims, he seeks remedies that are unavailable to him. He seeks "punitive damages" for his First and Fourteenth Amendment claims. Dkt. 3 Prayer, subsection c. The Supreme Court is clear that punitive damages are not available against state entities like WTAMU under 42 U.S.C. 1983. *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). All Defendants are being sued in their official capacities, and

as a result Dr. Carr's claims are against the state. Therefore, punitive damages are not available to Dr. Carr, and that claim should be dismissed.

In addition, Dr. Carr cannot seek a declaratory judgment related to his breach of contract claim. Through his pleading, Dr. Carr implicitly invokes the Texas Uniform Declaratory Judgments Act. *See* Dkt. 3 Prayer, Subsection a (seeking "A declaratory judgment that Defendants violated the First and Fourteenth amendments and *breached their contract* with Dr. Carr because he engaged in protected speech and religious belief.") "The determination of whether a party has breached a contract, while affecting a party's rights or status, is not a declaration of a right or status and therefore, is not the proper subject of a declaratory judgment." *Hill v. Heritage Resources,* 964 S.W.2d 89, 140 (Tex. App.—El Paso 1997, pet. denied). Dr. Carr does not state a claim and the requested relief should be dismissed with prejudice.

## PRAYER

Defendants therefore respectfully request this court GRANT the Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Stephanie A. Criscione Houser /s/*

**STEPHANIE A. CRISCIONE HOUSER**
Assistant Attorney General
Texas Bar No. 24109768
Office of the Attorney General
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848
(512) 475-4104 | Fax: (512) 320-0667
Stephanie.Criscione@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that that on <u>March 6, 2026</u>, this document was filed electronically via the Court's

electronic filing system, causing electronic service upon all counsel of record.

*/s/ Stephanie A. Criscione Houser /s/*
**STEPHANIE A. CRISCIONE HOUSER**
Assistant Attorney General
Lead Counsel for Defendant
